V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

V. James DeSimone (SBN: 119668)
vjdesimone@vjdlaw.com
Carmen D. Sabater (SBN 303546)
csabater@vjdlaw.com
Emma Lingel-Gary (SBN: 352654)
elingel-gary@vjdlaw.com
**V. JAMES DESIMONE LAW**
4052 Del Rey Avenue, Suite 102
Marina del Rey, California 90292
Telephone: 310.693.5561
Email: collins-vjd000221@vjdlaw.com

Attorneys for Plaintiff,
TUCKER EVERETT COLLINS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TUCKER EVERETT COLLINS

Plaintiff,

v.

UNITED STATES OF AMERICA; and DOES 1-10, inclusive,

Defendants.

Case No.:

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

1. **Violation of Bane Civil Rights Act (Civil Code § 52.1) (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**
2. **Assault and Battery (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**
3. **Negligence (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**
4. **Intentional Infliction of Emotional Distress (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**

///

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

## NATURE OF ACTION

1. This action seeks compensatory damages against DEFENDANT UNITED STATES OF AMERICA for violating PLAINTIFF's rights under federal and state law. Federal agents of the Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), U.S. Border Patrol, and other federal law enforcement components assaulted PLAINTIFF and used unjustified force against him.

2. On March 28, 2026, federal officers stationed behind a gated fence at the Metropolitan Detention Center (MDC) in downtown Los Angeles shot PLAINTIFF in the right eye with a less-lethal projectile. PLAINTIFF was an 18-year-old University of Southern California student. He was peacefully photographing the "No Kings" demonstration. He posed no threat to any officer or person. Nobody in his immediate vicinity posed any imminent threat of bodily harm to the federal officers. The shot destroyed Tucker's eye, fracturing the orbital wall, penetrating the eyeball and rupturing the globe. The eye surgeon could do nothing to save it and surgically removed the eye.

3. The officers stood behind a steel fence, protected from the people outside. Without a warning that PLAINTIFF heard, they fired tear gas and less-lethal munitions into a group of people that included PLAINTIFF. Projectiles were fired at and near head level. The officers recklessly disregarded the obvious risk that people standing peacefully on a public street would suffer catastrophic injury, including the permanent loss of an eye.

4. Federal agents used excessive force when they fired less-lethal projectiles at individuals like PLAINTIFF. PLAINTIFF had done nothing to justify any use of force. No federal agent gave PLAINTIFF any medical aid after he was shot. Through these actions, DEFENDANTS violated PLAINTIFF's rights under federal and California law.

///

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

5. On April 14, 2026, PLAINTIFF presented a timely administrative claim under the Federal Tort Claims Act to the Department of Homeland Security, U.S. Customs and Border Protection, U.S. Border Patrol, and U.S. Immigration and Customs Enforcement. The claim demanded $100,000,000 in damages. More than six months have passed since the claim was presented without a final disposition. PLAINTIFF has therefore exhausted his administrative remedies.

## PARTIES AND THEIR AGENTS

6. PLAINTIFF TUCKER EVERETT COLLINS ("PLAINTIFF" or "Mr. Collins") is, and at all times relevant was, a United States citizen residing in Los Angeles County, California. He was born on May 24, 2007, and was 18 years old at the time of the incident.

7. DEFENDANT UNITED STATES OF AMERICA is the sovereign government of the United States. Under the Federal Tort Claims Act, it is liable for the tortious conduct of its employees acting within the scope of their employment, including the employees of DHS, ICE, CBP, U.S. Border Patrol, and the Federal Protective Service.

8. Defendants DOES 1 through 10, inclusive, are sued under fictitious names. PLAINTIFF does not yet know their true names and capacities. PLAINTIFF is informed and believes, and on that basis alleges, that each DOE Defendant was legally responsible in some manner for the events alleged in this Complaint, and that their conduct proximately caused PLAINTIFF's injuries. PLAINTIFF will amend this Complaint to state the DOE Defendants' true names and capacities once they are known.

9. At all times relevant, each Defendant acted as the agent, servant, and employee of each other Defendant, within the course and scope of that agency and employment. Each Defendant ratified, authorized, and approved the conduct of the other Defendants.

///

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

## JURISDICTION AND VENUE

10. This Court has jurisdiction over PLAINTIFF's claims under 28 U.S.C. § 1346(b) (Federal Tort Claims Act) and 28 U.S.C. § 1331 (federal question jurisdiction).

11. Venue is proper in this Court under 28 U.S.C. § 1402(b). PLAINTIFF resides in this District, and the acts, omissions, and injuries giving rise to this action occurred in Los Angeles County, within the Central District of California.

## FACTUAL ALLEGATIONS

### *Background*

12. PLAINTIFF is a student at the University of Southern California, where he studies astronautical engineering with a minor in cinematic arts. He grew up in Sherman Oaks and graduated from The Buckley School. Before the incident, he lived in the USC dormitories.

13. Photography is PLAINTIFF's passion. He enjoys documenting events and making short films, which is why he chose cinematic arts as his minor. He works on engineering projects every day through USC's Rocket Propulsion Lab, the university's rocketry team. Outside of school, he hiked, scrambled, climbed, and rode his bike, which was also how he got to his classes.

14. PLAINTIFF cares deeply about civil rights and civil liberties. On that day, he photographed the public demonstrations as a way of documenting matters of public concern and engaging with people exercising their Constitutional Rights.

///

///

///

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

***The March 28, 2026 Demonstration***

15. On Saturday, March 28, 2026, PLAINTIFF attended the "No Kings" rally in downtown Los Angeles. He then walked to the area outside the MDC, a federal detention facility on Alameda Street between Aliso and Temple Streets, to keep taking photographs.

16. PLAINTIFF carried a Sony FX30 camera with a large zoom lens. He was there as a private citizen to peaceably assemble and document events through photography. He was wearing a bright red T-shirt and a white face mask and holding a large camera.

17. Federal officers were positioned behind the MDC's gated fence. PLAINTIFF stood approximately 20 to 30 feet from the officer line, taking photographs. He never approached the fence. He did not throw anything, shout at officers, or act in any confrontational or threatening way.

18. Nobody in PLAINTIFF's immediate vicinity was throwing anything. Prior to the shot being fired into Mr. Collins' right eye, nobody in the crowd was engaging in conduct posing a threat of imminent danger of death or physical injury to federal officers or anyone else.

***The Unlawful Use of Force***

19. Before PLAINTIFF was struck, officers behind the fence began firing less-lethal projectiles. They fired at the ground and at the fence, where the projectiles burst and released chemical irritants. PLAINTIFF heard no dispersal order before he was hit. It appeared that the Officers were deliberately attempting to provoke the crowd and justify the shooting of less lethal projectiles at individuals in the crowd.

20. At approximately 5:00 to 5:10 p.m., a federal officer fired a less-lethal projectile from behind the fence striking PLAINTIFF in the right eye. PLAINTIFF did not see the projectile coming or the officer who fired it. The projectile, or fragments of it, penetrated his right eye, fractured his orbital wall and ruptured the

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

globe, otherwise known as his eyeball.

21. PLAINTIFF was standing up right holding his camera when the officer shot him. The projectile was fired at head-level. Video evidence reveals that the shot came from a federal officer at a time when there was absolutely no threat of death or serious bodily harm. The DHS Officer who shot Tucker Collins likely targeted him as the FN-303 projectile launcher has a high degree of accuracy.

22. Firing projectiles into a group or individual, at and near head level, at people posing no threat violated basic policing standards and the Federal Protective Services own policies governing the use of kinetic energy projectiles. Those standards prohibit aiming such projectiles indiscriminately into a crowd and prohibit aiming them at the head, neck, or other vital organs, unless deadly force is authorized.

23. Federal Protective Services Policies on FN303 use states, "Officers should avoid intentional impact to the head, neck, spine." Additionally, "[t]he head, face, neck, groin or other sensitive areas are to be avoided, unless deadly force is authorized." FPS's Public Order Policing Policy also says: "Impact projectiles shall not be fired indiscriminately into crowds." All of these policies were violated when the federal officer shot Tucker Collins.

24. California Penal Code Section 13652 states, in relevant part, at (b)(4): "[p]rojectiles shall not be aimed indiscriminately into a crowd or group of persons" and at (b)(9), "[k]inetic energy projectiles shall not be aimed at the head, neck, or any other vital organs." Thus, when the federal officer shot at Tucker Collins he committed a crime under California Law.

25. The manufacturer of the FN-303 warns against the manner in which it was used here. The weapon's maker is FN America, the U.S. subsidiary of Belgian arms maker FN Herstal. A published engineering analysis of the round puts that payload at just under a quarter ounce, about three-quarters of the round's total weight. Based on FN's specifications, it leaves the launcher at nearly 200 mph. "The

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

primary effect of the projectile is trauma, which directly neutralizes the aggressor," reads the FN 303 projectile page, which also states "Misuse may result in injury or death. Avoid aiming at face or head." FN's global product page is more explicit: "Inappropriate use of the FN 303… can cause fatal injury. Never aim at the head or neck."

26. When he was shot, PLAINTIFF posed no imminent threat to any officer or other person. He was peacefully exercising his First Amendment rights to assemble and to document a public event.

27. After shooting and catastrophically injuring PLAINTIFF, no federal agent gave him any medical aid, even though his injuries were obvious and severe.

***Immediate Aftermath and Medical Treatment***

26. PLAINTIFF did not lose consciousness. He immediately felt intense pain and lost vision in his right eye. Volunteer street medics came to his aid. A street medic flushed his eye with saline, placed a wrapped eye pad over it, and applied an ice band for the swelling. There was so much blood that she could not tell at the scene whether PLAINTIFF had lost the eye. Tear gas was still being deployed. As PLAINTIFF was carried through the gas, he vomited at least twice.

27. A nurse who happened to be at the scene saw PLAINTIFF's grave head injury and drove him in her own vehicle to the emergency room at PIH Health Good Samaritan Hospital, arriving around 5:30 p.m. PLAINTIFF was then transferred by ambulance to the California Hospital Medical Center trauma center. The ambulance crew recorded the mechanism of injury as penetrating.

28. PLAINTIFF was admitted to California Hospital Medical Center on March 28, 2026. Workup revealed projectile shrapnel in the right orbit and an orbital floor fracture. Ophthalmology was consulted emergently.

29. On March 29, 2026, PLAINTIFF underwent emergency surgery lasting approximately two and a half hours, performed by David B. Samimi, M.D., with Marcos Lemor, M.D. The procedures included:

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

a. Right eye enucleation (surgical removal of the eye) with placement of a 20 mm silicone implant;

b. Orbitotomy with exploration and removal of orbital foreign bodies;

c. Repair of a right upper eyelid margin laceration;

d. Conjunctivoplasty;

e. Retrobulbar injection; and

f. Temporary tarsorrhaphy (partial sewing shut of the eyelid).

30. PLAINTIFF's postoperative diagnoses were a ruptured right globe with multiple foreign bodies and residue in the orbit, and a right upper eyelid margin laceration. His discharge diagnoses were penetrating trauma, orbital wall fracture, and rupture of globe.

31. PLAINTIFF's treating surgeon documented that so much yellow gelatinous material and so many small grey bead-like particles from the projectile were scattered throughout the orbit that a non-porous implant had to be chosen.

32. PLAINTIFF was discharged on March 30, 2026. He was told not to drive, to avoid lifting and strenuous activity, not to bathe, and to rest. He was prescribed Norco (hydrocodone-acetaminophen) for pain, cephalexin as an antibiotic, and Colace.

33. PLAINTIFF continued treatment with Dr. Samimi at Eyesthetica after discharge. On April 2, 2026, PLAINTIFF reported burning, dryness, and discomfort when moving his eyes and head, with pain reaching 5/10. The pressure patch and temporary tarsorrhaphy were removed, and he was prescribed erythromycin ointment for his eyelid incisions. On April 30, 2026, PLAINTIFF reported that the conformer (a temporary shell placed in the eye socket) kept falling out, and he was still adjusting to a temporary prosthesis. He was referred to an ocularist for a prosthesis fitting and told to follow up in two to three months. He has been diagnosed with acquired absence of the right eye.

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

***Severe and Permanent Injuries***

35. As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF has permanently lost his right eye. He now has permanent monocular vision, reduced peripheral vision, and impaired depth perception. He has a permanent change to his appearance, including scarring of his eyelid. He will need ongoing prosthetic and ophthalmologic care, and possibly cosmetic and reconstructive surgery, for the rest of his life.

36. For approximately the first two weeks after he lost his eye, PLAINTIFF had significant pain and discomfort in the eye region, as well as nausea. He had to avoid turning his head because of the discomfort. Simple daily tasks became difficult, such as getting in and out of a car.

37. Those early, temporary symptoms have given way to the permanent effects of losing an eye: significantly impaired depth perception and reduced peripheral vision. His reduced peripheral vision affects his daily life. It makes driving more difficult, and he is more likely to bump into people and objects. His impaired depth perception makes it difficult for him to handle objects, particularly small ones. He fumbles with everyday items such as his debit card and university identification card, and he misjudges pouring liquids. He is very concerned that this could impact his intended career in avionics systems, which will require precision work involving his hands and vision.

38. PLAINTIFF missed approximately a week of classes at USC, had to delay his schoolwork, and will have to retake at least one class. His education has been disrupted.

39. The loss of his eye makes it more difficult for him to participate in the outdoor activities he loves, including scrambling, climbing, hiking, and bike riding. He can no longer safely photograph public events like the one where he was injured.

///

///

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

40. PLAINTIFF's engineering work has been permanently affected. His impaired eyesight and depth perception make him hesitant to use certain manufacturing equipment and make precision tasks permanently harder. Engineering and photography, his chosen field of study and his passion, both depend heavily on eyesight.

41. PLAINTIFF increasingly expects to build his career in avionics systems, a field that requires extensive precision work. That work includes wire harnessing, which involves soldering and handling and crimping small connectors, and printed circuit board work, which involves placing surface-mount components measured in hundredths of an inch and tenths of a millimeter. His impaired depth perception and difficulty manipulating small objects directly threaten his ability to perform this work.

42. PLAINTIFF has a permanently altered appearance which could subject him to future discrimination both personally and professionally. PLAINTIFF may be perceived as unable to perform the precision work necessary in his field and will likely lose opportunities as a result.

***Emotional and Psychological Harm***

42. As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF has suffered and continues to suffer severe emotional distress. This includes anxiety, distress over his permanent disfigurement and his future medical needs, and lasting harm to his self-image and self-confidence. PLAINTIFF describes it as surreal and disturbing to no longer have his right eye. PLAINTIFF has nightmares about the incident. He also experiences panic attacks triggered by stimuli.

43. PLAINTIFF wants to keep attending demonstrations and exercising his First Amendment rights, but he is afraid of being injured again. In his words, "it feels safer to climb a mountain than to exercise my First Amendment rights."

///

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

***Economic Damages***

42. PLAINTIFF has incurred, and will continue to incur, substantial medical expenses for past and future care, including prosthetic eye fitting and replacement, ocular implant maintenance, ongoing ophthalmologic care, and anticipated cosmetic and reconstructive procedures.

43. PLAINTIFF has incurred, and will incur, additional educational costs, including the cost of retaking coursework. He has also suffered a loss of future earning capacity, because his permanent loss of vision limits his ability to work in engineering, photography, and cinematic arts.

**FIRST CAUSE OF ACTION**

**Violation of Bane Civil Rights Act (Civil Code § 52.1)**

**(Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**

**Against ALL DEFENDANTS**

44. PLAINTIFF realleges the preceding paragraphs and incorporates them into this cause of action as if fully alleged here.

45. This cause of action is asserted against DEFENDANTS UNITED STATES OF AMERICA and DOES 1-10 under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.

46. As alleged above, DEFENDANTS interfered by threats, intimidation, violence, and coercion with PLAINTIFF's rights under California state and federal law and under the state and federal Constitutions. These include the right to be free from excessive force; the rights to free speech, to assemble, and to petition for redress of grievances; the right to due process; and the right to bodily integrity and protection from bodily harm. They include PLAINTIFF's rights under Civil Code § 43, Penal Code §§ 149, 240, 242, 245, and Penal Code §§ 835a and 13652; and under Article I, Sections 1, 7, and 13 of the California Constitution.

///

///

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

47. DEFENDANTS' conduct caused PLAINTIFF catastrophic physical injuries, including the permanent loss of his right eye. It also caused him extreme pain and suffering, limitations on his functioning and activities, mental anguish, and emotional distress.

48. DEFENDANTS are liable for PLAINTIFF's injuries under the doctrine of respondeat superior and the Federal Tort Claims Act.

49. As a direct and legal result of DEFENDANTS' acts and omissions, PLAINTIFF suffered damages including pain and suffering, physical injury and permanent disfigurement, emotional distress, medical expenses, and costs of suit.

50. PLAINTIFF is informed and believes, and on that basis alleges, that the federal agents' acts were willful, malicious, intentional, oppressive, and reckless, and were done in conscious disregard of PLAINTIFF's rights, welfare, and safety.

51. PLAINTIFF seeks all damages available under state law, including treble damages.

**SECOND CAUSE OF ACTION**

**Assault and Battery**

**(Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**

**Against ALL DEFENDANTS**

52. PLAINTIFF realleges the preceding paragraphs and incorporates them into this cause of action as if fully alleged here.

53. This cause of action is asserted against DEFENDANTS UNITED STATES OF AMERICA and DOES 1-10 under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.

54. Federal agents acting within the course and scope of their employment with the United States, through DHS, ICE, CBP, and related federal components, wrongfully, unlawfully, intentionally, and violently shot PLAINTIFF in the right eye with a less-lethal projectile. By doing so, they battered PLAINTIFF and caused

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

him catastrophic injury.

55. PLAINTIFF did not consent to this contact.

56. DEFENDANTS' conduct was intentional, willful, and malicious.

57. When the battery occurred, PLAINTIFF posed no threat to DEFENDANTS or anyone else, and he was peacefully exercising his constitutional rights.

58. DEFENDANTS' use of force was unreasonable and unjustified, and it exceeded any lawful authority.

59. The United States is liable for PLAINTIFF's injuries under the doctrine of respondeat superior and the Federal Tort Claims Act.

60. As a direct and proximate result of DEFENDANTS' battery, PLAINTIFF suffered catastrophic physical injuries, including a ruptured globe, an orbital fracture, retained foreign bodies, an eyelid laceration, and the surgical removal of his right eye. He also suffered permanent disability and disfigurement, pain and suffering, emotional distress, and economic damages as alleged above.

61. PLAINTIFF seeks all damages available under this claim.

**THIRD CAUSE OF ACTION**

**Negligence**

**(Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**

**Against ALL DEFENDANTS**

62. PLAINTIFF realleges the preceding paragraphs and incorporates them into this cause of action as if fully alleged here.

63. This cause of action is asserted against DEFENDANTS UNITED STATES OF AMERICA and DOES 1-10 under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.

64. DEFENDANTS owed PLAINTIFF a duty to exercise reasonable care in their conduct and to refrain from using unreasonable or excessive force.

///

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

65. DEFENDANTS acted negligently and recklessly toward PLAINTIFF, including by:

a. Failing to assess whether PLAINTIFF or anyone near him posed a threat before using force;

b. Deploying less-lethal weapons dangerously and recklessly from behind a protective fence;

c. Firing projectiles indiscriminately into a group of people, and at and near head level;

d. Aiming and firing a projectile that struck PLAINTIFF in the eye without justification;

e. Failing to use de-escalation techniques;

f. Failing to give adequate warnings before using force;

g. Using force against a person who posed no threat;

h. Failing to monitor and record their use of force;

i. Allowing, encouraging, or condoning agents firing less-lethal projectiles at crowds without regard to who is hit or where on the body;

j. Failing to properly train and supervise employees in the use of kinetic energy projectiles;

k. Failing to provide PLAINTIFF prompt medical care; and

l. Handling the incident response negligently.

67. As a direct and proximate result of DEFENDANTS' conduct, and of other negligent conduct not yet discovered, PLAINTIFF suffered catastrophic physical injuries and severe physical, mental, and emotional pain and suffering.

68. DEFENDANTS knew or reasonably should have known that their agents would commit such misconduct against peaceful people like PLAINTIFF while acting within the course and scope of their employment, and that PLAINTIFF would suffer the injuries alleged here as a result.

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292

69. As a further direct and legal result of DEFENDANTS' acts and conduct, PLAINTIFF has suffered and continues to suffer catastrophic physical injuries; emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety; and permanent disability and disfigurement. The loss of PLAINTIFF's right eye is permanent.

70. DEFENDANTS are liable for PLAINTIFF's injuries under the doctrine of respondeat superior and the Federal Tort Claims Act.

71. PLAINTIFF seeks all damages available under this claim.

**FOURTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**

**Against ALL DEFENDANTS**

71. PLAINTIFF realleges the preceding paragraphs and incorporates them into this cause of action as if fully alleged here.

72. This cause of action is asserted against DEFENDANTS UNITED STATES OF AMERICA and DOES 1-10 under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.

73. DEFENDANTS' conduct was extreme and outrageous. It was done either with the intent to cause PLAINTIFF emotional distress or with reckless disregard of whether it would cause him such distress.

74. Shooting an 18-year-old photographer in the eye from behind a protective fence while he peacefully documented a public demonstration, and then leaving him without aid, exceeded all bounds of decency tolerated in a civilized society.

75. As a direct and legal result of DEFENDANTS' conduct, PLAINTIFF has suffered and continues to suffer severe emotional and mental distress, anguish, humiliation, fright, shock, anxiety, and lasting psychological harm from the permanent loss of his eye and the resulting disfigurement. PLAINTIFF is informed

and believes, and on that basis alleges, that some if not all of these injuries are reasonably certain to be permanent.

76. DEFENDANTS are liable for PLAINTIFF's injuries under the doctrine of respondeat superior and the Federal Tort Claims Act.

77. PLAINTIFF seeks all damages available under this claim.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff TUCKER EVERETT COLLINS prays for judgment against DEFENDANTS UNITED STATES OF AMERICA and DOES 1-10, and each of them, as follows:

1. For general and non-economic damages according to proof at trial;
2. For special damages according to proof at trial, including past and future medical expenses, prosthetic and ophthalmologic care, educational expenses, and loss of earning capacity;
3. For treble damages under Civil Code § 52.1;
4. For prejudgment interest as allowed by law;
5. For costs of suit incurred herein;
6. For attorneys' fees under the Equal Access to Justice Act; and
7. For such other and further relief as the Court deems just and proper.

Date: November 23, 2026

**V. JAMES DESIMONE LAW**

By: ______________________

V. JAMES DESIMONE, ESQ.
CARMEN D. SABATER, ESQ.
EMMA LINGEL-GARY, ESQ.

Attorneys for Plaintiff,
TUCKER EVERETT COLLINS

V. JAMES DESIMONE LAW
4052 DEL REY AVENUE, SUITE 102,
MARINA DEL REY, CALIFORNIA 90292